UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

METROPCS NEW YORK, LLC, a Delaware corporation,

    Plaintiff,

v.

35-46 BROADWAY, INC., a New York corporation; and ABDALLAH NOFAL, DAWOD NOFAL and SAED NOFAL, individuals; and GEE4BEE WIRELESS, INC., a New York corporation,

    Defendants.

Case No. C17-1554RSM

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the Court on Plaintiff MetroPCS New York LLC's ("MetroPCS") Motion for Preliminary Injunction. Dkt. #23. Plaintiff seeks an Order enjoining Defendants 35-46 Broadway, Inc., Abdallah Nofal, Dawod Nofal, Saed Nofal and Gee4Bee Wireless, Inc. from selling competing wireless telephone and wireless internet services for six months, within two miles of the location Defendants used to sell MetroPCS services, as provided for under 35-46 Broadway's Exclusive Subdealer Agreement ("Subdealer Agreement") with MetroPCS. *Id.* Defendants have failed to respond. For the reasons set forth below, the Court now GRANTS Plaintiff's motion for preliminary injunction.

## II. BACKGROUND

Plaintiff initially filed this matter on October 20, 2017. Dkt. #1. To date, no Defendants have appeared, and the Court has entered default against all Defendants except Gee4Bee Wireless,

ORDER GRANTING MOTION FOR PRELIMINARY
INJUNCTION - 1

Inc. Dkt. #16. Plaintiff filed an Amended Complaint on April 3, 2018. Dkt. #19. The instant motion followed on June 14, 2018.

According to Plaintiff, MetroPCS is a wireless telephone carrier with a national network and brand. Dkt. #25 at ¶ 2. MetroPCS sells wireless personal communications services to its customers, including voice communications, wireless internet services, ringtones, SMS texting, instant messaging, and other wireless phone and data services. *Id.* MetroPCS focuses on offering "unlimited" pay-in-advance ("prepaid") plans. *Id.* It relies on its dealers and subdealers to market and sell MetroPCS-packaged mobile wireless telephones, data modems, and accessories to users of MetroPCS's service, and to provide customer service. *Id.*

Defendant Abdallah Nofal, on behalf of 35-46 Broadway, executed an Exclusive Subdealer's Agreement to sell MetroPCS brand services ("Subdealer Agreement") on or about August 20, 2015. *Id.* at ¶ 3 and Dkt. #24 at ¶ 11, Ex. E. Paragraph 1 of the Subdealer Agreement provided that "Exclusive Subdealer shall comply with all terms and conditions of the Dealer Agreement, including but not limited to . . . [the] covenant not to compete (Section 16.7)." Dkt. #24 at ¶ 11, Ex. E. Pursuant to the Dealer Agreement, 35-46 Broadway agreed that it would not solicit or divert MetroPCS customers during the term of the Dealer Agreement and for six months following termination:

> All customers are owned by MetroPCS and not by Dealer. During the term of this Agreement and for a period of six (6) months after termination of this Agreement (whether voluntary or involuntary, with or without cause), Dealer, its principals, owners, partners, members, shareholders, officers, directors, employees, agents ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest and/or any successor entity to Dealer (Affiliated Entity") shall not at any time (i) request any MetroPCS customer to curtail or cancel its business with MetroPCS, or (ii) otherwise solicit, divert or attempt to divert any such MetroPCS customer from patronizing MetroPCS.

*Id.*, Ex. F at ¶ 2.4 and Ex. E at ¶ 1.

The Dealer Agreement also contains a six-month non-competition period after termination or expiration of the agreement:

> Dealer covenants and agrees that during the Term of this Agreement and for a period of at least six (6) months following any termination or expiration of this Agreement, Dealers shall not, and will cause its Affiliated Persons and Affiliated Entities, not to directly or indirectly (including by licensing) engage or participate in, or acquire, manage, operate, control or participate in the management, operation or control of, either alone or jointly, any entity that engages in the sale, resale or distribution of any wireless telephone or wireless internet data service including, without limitation, any other wireless phone, or wireless internet service, or service plan that offers unlimited local and/or long distance calls and/or unlimited wireless internet service for a flat price, within a two (2) mile radius of Dealer's MetroPCS Storefront Locations. If Dealer breaches this warranty and covenant, then, in addition to any other legal or equitable remedy that MetroPCS may have, the post-termination of this warranty covenant will be extended for one (1) day for each day during which the Dealer's breach was ongoing.

Dkt. #24 at ¶ 12, Ex. F at ¶ 16.7.

The non-compete and non-solicitation provisions expressly apply to 35-46 Broadway itself, and to its owners, shareholders, members, officers, partners, and directors ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest ("Affiliated Entity"). *Id.*, Ex. F at ¶ 2.4 and Ex. E at ¶ 1.

Defendant 35-46 Broadway (through Abdallah Nofal) executed the Subdealer Agreement on or about August 20, 2015. Dkt. #25 at ¶ 3 and Dkt. #24 at ¶ 11, Ex. E. Plaintiff alleges that on or before May 2017, 35-46 Broadway breached the Subdealer Agreement, as a result of which MetroPCS' Master Dealer (Licensed Products) provided Defendants a Notice of Termination of the Subdealer Agreement for cause by letter dated May 2, 2017. Dkt. #25 at ¶ 8. Termination became effective June 7, 2017. *Id.*

However, Plaintiff alleges, notwithstanding the Dealer and Subdealer Agreements described above, Defendants quickly converted the former MetroPCS store to sell competing

wireless telephone and wireless internet data services. Initially, Defendants sold "Ultra" and "Simple Mobile" wireless services, both of which are competing pay-in-advance wireless providers. Currently, Defendants have been accepted and are operating as an authorized TracFone dealer, selling TracFone wireless services from the same location. TracFone is also a competitor of MetroPCS. Dkt. #25 at ¶ 9.

### III. DISCUSSION

**A. Legal Standard For Preliminary Injunctions**

In determining whether to grant a preliminary injunction, this Court considers: (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to that party if an injunction is not issued; (3) the extent to which the balance of hardships favors the moving party; and (4) whether the public interest will be advanced by the injunction. *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). The Ninth Circuit has often compressed this analysis into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm. *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000). Thus, MetroPCS will be entitled to preliminary relief if it is able to show either: (1) probable success on the merits and the possibility of irreparable harm; or (2) the existence of serious questions going to the merits and a fair chance of success thereon, with the balance of hardships tipping sharply in favor of an injunction. *Miller*, 19 F.3d at 456.

*1. Likelihood of Success on the Merits*

As an initial matter, the Court notes again that Defendants have failed to respond to the instant motion. Pursuant to this Court's Local Rules, "[e]xcept for motions for summary judgment,

if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." LCR 7(b). The Court deems Defendants' failure to respond to be such an admission in this case.

Turning now to Plaintiff's substantive arguments, for the reasons discussed by Plaintiff in its motion and as further discussed herein, the Court agrees that Plaintiff has demonstrated a likelihood of success on its claim for injunctive relief. The Court finds that, based upon the information currently before the Court, Defendants appear to be in direct violation of the Dealer Agreement, including the non-competition and non-solicitation provisions. Further, the Court agrees that the non-compete and non-diversion provisions are narrowly tailored to protect MetroPCS's legitimate interests, and are reasonable in scope, and therefore are enforceable. *See Hometask Handyman Servs. v. Cooper*, 2007 U.S. Dist. LEXIS 84708, *8 - *11 (W.D. Wash. 2007); *Perry v. Moran*, 109 Wn. 2d 691, 700 (1987) (*modified as to damages only*, 111 Wn. 2d 885 (1989)).[1]

This Court has previously found sufficient evidence to support a preliminary injunction in a case involving MetroPCS and the identical noncompete provisions:

> MetroPCS has provided sufficient evidence to show that the Dealer Agreement's non-compete and non-solicitation provisions are likely enforceable against Defendants. Both provisions operate for only six months after termination of the Dealer Agreement (Agreement ¶¶ 2.4, 16.7), and the non-compete provision operates only within a two-mile radius of Defendants' former MetroPCS storefronts (*id.* ¶ 16.7). *See Armstrong*, 635 P.2d at 1118-19 (enforcing a two-and-a-half-year restriction within the market area of other franchisees); *HomeTask*, 2007 WL 3228459, at *3-4 (upholding a two-year, 25-mile-radius restriction). MetroPCS has also shown a likelihood that these restrictions are reasonably necessary to protect its business, particularly in terms of maintaining its customer base and preventing appropriation of and

---

[1] Under the contractual choice of law provision in the Dealer Agreement, Washington law applies. Dkt. #24 at ¶ 12, Ex. F at ¶ 21.1.

> damage to its goodwill. (*See* Bromberg Decl. ¶¶ 3-7, 11-12); *HomeTask*, 2007 WL 3228459, at *4.

Dkt. #24 at ¶ 13, Ex. G (*MetroPCS v. City Wireless*, Case No. C15-0769JLR). Thus, the Court finds here that Plaintiff has shown likelihood of success on the merits in this case.

*2. Irreparable Harm*

The Court now turns to Plaintiff's assertions of irreparable harm. For the reasons discussed by Plaintiff, the Court agrees that MetroPCS has no adequate remedy at law to redress the injuries caused by the alleged breach and it will suffer substantial and irreparable harm – the continued diversion of its customers at the former MetroPCS location operated by 35-46 Broadway – unless Defendants are enjoined from violating the Dealer Agreement. *See* Dkt. #23 at 8-9.

Under similar circumstances in another case, this Court found that allowing the former franchisee "to exploit the company's good will and her former customer base would place [Plaintiff franchisor] at a distinct disadvantage in attempting to re-franchise the area or otherwise recapture the market." *Hometask*, 2007 WL 3228459 at * 11. The Court further found that "there is a possibility of serious injury to plaintiff's goodwill if an injunction does not issue." *Id.* Likewise, in *City Wireless*, the Court found that MetroPCS had shown that irreparable harm would result from a continued breach of the identical noncompete clause. Dkt. #24 at ¶ 13, Ex. G at 6. Accordingly, in this case the Court also finds that Plaintiff has demonstrated the possibility of irreparable harm if an injunction does not issue.

*3. Balance of Equities*

Although the Court has already made findings to support a preliminary injunction, the Court also addresses the balance of equities in this instance. In examining this factor, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Here, the Court agrees

with Plaintiff that there is no likelihood of substantial harm to Defendants if the preliminary injunction requested here is issued, as such as an Order will simply compel Defendants to comply with the terms of their Dealer Agreement for the relatively short duration of six months. Accordingly, the balance of equities tips in favor of MetroPCS. *See* Dkt. #23 at 9.

*4. Public Interest*

Finally, the Court addresses whether an injunction is in the public interest. At this time, the Court finds that the public interest does not weigh heavily in favor of any party. There is no evidence that the Court's decision on this injunction will impact the public.

**B. Plaintiff's Request for Waiver of Bond**

Plaintiff has also requested that no bond be required should this Court enter a preliminary injunction. Dkt. #23 at 10-11. The Court agrees with Plaintiff that because it has demonstrated a strong probability of success on the merits, and seeks only to enjoin Defendants from doing what they have no right to do under their agreement with MetroPCS, there is no genuine likelihood of harm that they will be "wrongfully enjoined." *Id.* Accordingly, under these circumstances, no security is necessary. *See* Dkt. #24 at ¶ 13, Ex. G.

**C. Request for Attorney's Fees**

Plaintiff has submitted a proposed Order including an award of attorney's fees pursuant to the terms of the Dealer Agreement between the parties (Dkt. #23-1); however, Plaintiff has failed to raise that issue or brief it in any meaningful matter in its motion. *See* Dkt. #23. Should Plaintiff seek an award of its reasonable attorney fees and costs incurred in connection with this motion, Plaintiff must make such a request by filing the appropriate motion before this Court, setting forth the applicable legal standards, and providing the appropriate evidence supporting the fee request.

## IV. CONCLUSION

The Court, having considered Plaintiff's motion, the Declarations and Exhibits in support thereof, and the remainder of the record, hereby finds and ORDERS:

1. Plaintiff's Motion for Preliminary Injunction (Dkt. #23) is GRANTED.

2. Defendants 35-46 Broadway, Abdallah Nofal, Dawod Nofal, Saed Nofal and Gee4Bee Wireless; 35-46 Broadway's Affiliated Persons and Affiliated Entities; 35-46 Broadway's principals, officers, directors, employees, agents, successor entities; and all persons acting in concert or in active participation with them, are hereby ENJOINED, directly or indirectly, from:

    a. Engaging or participating in, or acquiring, managing, operating, controlling or participating in the management, operation or control of any entity that engages in the business of the sale, resale, or distribution of any wireless telephone or wireless internet data service within a two mile radius of 35-46 Broadway's former MetroPCS store location;

    b. Selling, reselling or distributing any wireless telephone or wireless internet data service, within a two mile radius of 35-46's former MetroPCS store location;

    c. Requesting any MetroPCS customer to curtail or cancel its business with MetroPCS; and

    d. Otherwise soliciting, diverting or attempting to divert any such MetroPCS customer from patronizing MetroPCS.

3. This preliminary injunction is effective immediately and will remain in effect for six months, or until the trial on this matter, whichever comes first.

4. No bond or other security is required, pending further order of the Court.

DATED this 18th day of July, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE